IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALFREDO RODRIGUEZ,

Plaintiff,

vs. No. CIV-12-01133 KG/WPL

THE EVOLUTION GROUP,

Defendant.

AMENDED MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment on ADA Claim (Motion for Summary Judgment), filed on August 13, 2013. (Doc. 42). On September 13, 2013, Plaintiff filed a response to the Motion for Summary Judgment. (Doc. 49). On September 26, 2013, Defendant filed a reply. (Doc. 50). Having reviewed the Motion for Summary Judgment, the accompanying briefs, and the evidence of record, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, *et seq.*, claims in Count I and Count II. The Court also declines to exercise supplemental jurisdiction over Plaintiff's New Mexico common law claims, and, accordingly, dismisses Plaintiff's state common law claims without prejudice.

*I. The Complaint for Damages (Doc. 1)*

Plaintiff brings this disability discrimination lawsuit against his former employer, Defendant The Evolution Group, for alleged violations pursuant to the ADA and New Mexico common law. In Count I, Plaintiff brings an ADA claim against Defendant for disparate treatment. In Count II, Plaintiff alleges an ADA claim for Defendant's failure to accommodate his disability. In Count III, Plaintiff asserts a state common law *prima facie* tort claim. In Count

IV, Plaintiff alleges Defendant violated state common law by breaching an implied contract of employment. In Count V, Plaintiff contends that Defendant violated state common law by breaching an oral contract of employment.[1] In Count VI, Plaintiff asserts a state common law claim for breach of the implied covenant of good faith and fair dealing pertaining to the parties' oral and implied employment contracts.

Defendant now moves for summary judgment on Plaintiff's ADA claims, specifically, Count I and Count II. Plaintiff opposes the Motion for Summary Judgment in its entirety.

*II. Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-movant may not avoid summary

[1] On October 28, 2013, Plaintiff filed a Rule 41 Stipulation of Dismissal With Prejudice of Oral Contract Claim, Complaint Count V. (Doc. 52). On October 23, 2014, the Court granted the Rule 41 Stipulation of Dismissal With Prejudice of Oral Contract Claim, Complaint Count V. *See* (Doc. 56).

judgment by resting upon the mere allegations or denials of its pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*III. Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff*[2]

Defendant, a licensed business based in New Mexico, provides counseling services to individuals suffering from addictions. (Doc. 42) at 1; (Doc. 1) at 1. On July 1, 2001, Defendant hired Plaintiff in a salaried position as a licensed professional counselor. (Doc. 42) at 1; (Doc. 1) at 2. As a counselor, Plaintiff worked primarily with clients in the drug court program.[3] (Doc. 42-1) at 4 (depo. at 26). At his deposition, Plaintiff testified that, on average, he worked ten hours a day, Monday through Thursday, in the drug court program. *Id.* at 3 (depo. at 19). Plaintiff further testified that as part of his duties, he conducted group and individual counseling sessions with clients suffering from substance abuse as well as substance abuse co-mingled with psychiatric conditions. *Id.* at 4 (depo. at 26). Plaintiff testified that, as a counselor, it was important that he regularly attend the group and individual counseling sessions. *Id.* at 3 (depo. at 18). Plaintiff did state, however, that while a counselor's consistent presence was important for a client's treatment, that continuity was not always possible. *Id.* at 4-5 (depo. 28-29).

Plaintiff's drug court duties also required him to travel, two to three times a week, to the courthouse and attend drug court meetings and hearings. *Id.* at 2 (depo. at 14-16, 18). The drug court meetings were held with the presiding drug court judge and a probation officer, wherein they discussed each drug court clients' progress in the program. *Id.* at 2 (depo. at 14-15). Following the meetings, Plaintiff would appear at the drug court hearings to report on each

---

[2] Unless otherwise noted, the summary of material facts is undisputed.

[3] Plaintiff testified that he also conducted private individual counseling sessions for non-drug court clients on Friday mornings. (Doc. 42-1) at 3 (depo. at 18-19). Plaintiff testified that he was paid hourly for the Friday morning sessions because his salaried position did not include private counseling. *Id.*

individual client's therapeutic process. *Id.* (depo. at 15-17). Plaintiff also testified that one of the core responsibilities as a counselor was to be present and prepared for the drug court meetings and hearings. *Id.* at 2-3 (depo. at 16-17).

In late April 2011, Plaintiff became ill. (Doc. 42) at 2. On May 2, 2011, Plaintiff was admitted to the University of New Mexico Hospital due to gangrene in his left leg and "sepsis secondary to necrotizing fasciitis and septic shock."[4] *Id.*; (Doc. 42-2) at 5 (depo. at 101). As a result of Plaintiff's condition, Plaintiff's left leg was amputated below the knee. (Doc. 42) at 2. Following the initial amputation, Plaintiff underwent three additional amputations. (Doc. 42-2) at 5 (depo. at 102). Plaintiff's last amputation was on or about May 9, 2011. *Id.* On May 16, 2011, Plaintiff was discharged from the University of New Mexico Hospital. (Doc. 42) at 2. At some point between May 2, 2011, and May 16, 2011, Plaintiff told Daniel Blackwood (Blackwood), Defendant's Owner and Executive Director, that Plaintiff believed he could return to work within two weeks. (Doc. 50-4) at 2-3 (depo. at 52-53). Plaintiff testified, however, that he "never had it in [his] mind that it would be about two weeks," and that his statement was based only on his enthusiasm to return to work and not on a medical assessment. (Doc. 42-2) at 1, 3 (depo. at 36, 79). Furthermore, Blackwood testified that he barely recalled Plaintiff's

[4] The Court notes that it is unclear from the record if Plaintiff received medical treatment at the University of New Mexico Hospital or Presbyterian Hospital. It is undisputed that Plaintiff was admitted to the University of New Mexico Hospital for his four amputation surgeries. *See* (Doc. 42) at 2; (Doc. 49) at 1. Nonetheless, Plaintiff testified that he was a patient at Presbyterian Hospital during the three additional amputation surgeries. (Doc. 49-1) at 2 (depo. at 32). In addition, Daniel Blackwood testified that Plaintiff was a patient at Presbyterian Hospital. (Doc. 50-4) at 3 (depo. at 53). This fact, however, is immaterial to the Court's disposition of the Motion for Summary Judgment because it has no relation as to whether Plaintiff is a qualified individual for his two ADA claims. *See Phillips v. Calhoun*, 956 F.2d 949, 951-52 (10th Cir. 1992) (immaterial facts are irrelevant to the Court's disposition) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("under materiality requirement of Rule 56(c), '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment'")).

statement because it seemed unlikely that Plaintiff would be able to return to work within in two weeks due to Plaintiff's condition. (Doc. 50-4) at 3 (depo. at 53). Blackwood also testified that the two-week time period passed prior to Defendant terminating Plaintiff's salaried position. *Id.*

On May 17, 2011, Plaintiff entered Health South Rehabilitation as an inpatient. (Doc. 42) at 2. Sometime between May 17, 2011, and May 25, 2011, Plaintiff's sister-in-law told Blackwood that Plaintiff believed he could return to work in two weeks.[5] (Doc. 50-4) at 2-3 (depo. at 52-53); (Doc. 49-4) at 4 (depo. at 45). At his deposition, Blackwood testified that he struggled to recall the sister-in-law's statement because it seemed unlikely Plaintiff would return to work within such a short time period due to his condition. (Doc. 50-4) at 3 (depo. at 53). Blackwood also testified that the two week interval passed prior to Defendant terminating Plaintiff's salaried position. *Id.*

On May 25, 2011, Defendant sent Plaintiff a letter terminating his salaried position as a counselor with the drug court program. (Doc. 42-3). In the letter, Defendant stated that Plaintiff exhausted his sick leave and vacation benefits on or about the beginning of May 2011.[6] *Id.* at 1. The letter also noted that due to Plaintiff's absence for over a month, Defendant had to transfer Plaintiff's drug court clients and groups to other counselors. *Id.*; (Doc. 42-4) at 2 (depo. at 63).

---

[5] There is no evidence in the record as to whether the sister-in-law's statement was based on a medical assessment.

[6] Plaintiff disputes the assertion that he exhausted his sick leave. In his response, Plaintiff argues that he had additional sick leave at the beginning of May 2011. (Doc. 49) at 1. Plaintiff, however, has not produced any evidence pursuant to Fed. R. Civ. P. 56(c)(1)(A)-(B) to support a genuine dispute regarding his sick leave. Rather, Plaintiff cites to his deposition testimony in Defendant's exhibit A, page 43, lines 10-15, wherein he allegedly testified that he believed he had sick leave in May 2011. *Id.* That portion of Plaintiff's deposition, however, is not in the record. *See* (Doc. 49); (Doc. 42-1) at 4-5 (depo. at 25-32); (Doc. 42-2) at 1-2 (depo. at 33-36, 57-60); (Doc. 49-1) at 2-3 (depo. at 29-32, 49-52). Accordingly, Plaintiff's bare assertion in his response that material facts are in dispute is insufficient. Fed. R. Civ. P. 56(c)(1)(A)-(B).

Defendant also reasoned that keeping Plaintiff's position open indefinitely would have placed a hardship on Defendant. (Doc. 42-3) at 1; (Doc. 42-4) at 2 (depo. at 63). Lastly, Defendant offered Plaintiff a position as an "hourly-contract counselor" for private clientele with the flexibility to return to work at a pace that suited Plaintiff. (Doc. 42-3) at 1.

On May 26, 2011, the day after Defendant terminated Plaintiff's salaried position, Plaintiff's physician, Steve Ledesma (Dr. Ledesma), completed the Health Care Provider section of Plaintiff's Family and Medical Leave Act (FMLA) application.[7] (Doc. 50-5). In the application, Dr. Ledesma stated that Plaintiff would be incapacitated for six to nine months. *Id.* at 3. Dr. Ledesma also noted that Plaintiff would be unable to perform his job functions because Plaintiff could not walk. *Id.* at 2.

On June 8, 2011, Plaintiff was discharged from Health South Rehabilitation. (Doc. 42) at 2. At that time, Plaintiff was able to walk 150 feet with the assistance of a walker and Plaintiff could shower, dress, and use the bathroom without assistance. (Doc. 49-1) at 9 (depo. at 106-07). Within two weeks from his discharge, Plaintiff was able to drive a motor vehicle. *Id.* at 10 (depo. at 109). Plaintiff further testified that by July 2011, he believed he could return to part-time, and potentially, full-time work. (Doc. 50-3) at 3-4 (depo. at 88-89).

It is undisputed that during Plaintiff's hospitalization and rehabilitation, Plaintiff's medical providers had not informed Plaintiff of a timeframe in which he could return to work.

---

[7] It is unclear from the record whether Plaintiff submitted his FMLA application to Defendant. *See* (Doc. 50-3) at 2 (depo. at 82-83). Even if Plaintiff had submitted the FMLA application to Defendant, the submission would have occurred after Defendant terminated Plaintiff's salaried position. Thus, whether Defendant received the FMLA application after Plaintiff's termination is immaterial because the Court's analysis of whether Plaintiff is a qualified individual under the ADA is based on the information Plaintiff conveyed to Defendant prior to Plaintiff's termination. *See Smith v. Blue Cross Blue Shield of Kan., Inc.*, 102 F.3d 1075, 1077 (10th Cir. 1996) (holding that plaintiff not qualified individual because plaintiff failed to prove that she presented evidence of expected duration of impairment to Defendant prior to termination date).

(Doc. 42-2) at 1-4 (depo. at 36, 57, 79-80, 83). It is also undisputed that Plaintiff never provided Defendant with documentation from his medical providers regarding a specific or even a general timeframe in which he could return to work. *Id.* at 2-4 (depo. at 57, 79-80, 83).

*IV. Discussion*

*A. Plaintiff's ADA Claims in Count I and Count II*

Defendant contends that it is entitled to summary judgment on Plaintiff's ADA claims because Plaintiff was not qualified to perform the essential functions of his position, with or without an accommodation. In response, Plaintiff asserts that summary judgment is improper because Defendant failed to engage in the ADA required "interactive process."

The ADA prohibits employers from discriminating against individuals on the basis of disability. *See* 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. . . ." *Id.* § 12112(b)(5)(A). Thus, to state a *prima facie* ADA discrimination claim, Plaintiff must show that: (1) Plaintiff is disabled; (2) Plaintiff is qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) Defendant discriminated against Plaintiff on account of Plaintiff's disability. *Robert v. Bd. of Cnty. Comm'rs of Brown Cnty., Kan.*, 691 F.3d 1211, 1216 (10th Cir. 2012). Because Defendant only contends that Plaintiff cannot satisfy the second element, the Court will not examine the first and third elements of Plaintiff's ADA claims.

The ADA defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A reasonable

accommodation may include a brief leave of absence, "job restricting, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . and other similar accommodations." *Id.* § 12111(9); *Robert*, 691 F.3d at 1217-18 (internal citations omitted). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." *Mason v. Avaya Commc'ns Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004) (citing 29 C.F.R. § 1630.2(n)(1)). Physical attendance in the workplace, generally, is itself an essential function of a job. *Id.*; *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) ("Attendance is generally an 'essential' function of any job."), *overruled on other grounds by Ferguson v. Okla. Sec'y of State*, 6 Fed. Appx. 797 (10th Cir. 2001).

Furthermore, "once a *qualified individual* informs his employer of a disability, the employer must then engage the employee in an interactive process to determine if there is a reasonable accommodation." *Valdez v. McGill,* 462 Fed. Appx. 814, 819 (10th Cir. 2012) (emphasis added) (internal citations omitted). Despite the importance of the interactive process, it is only a means to an end. *Id.* For Plaintiff to recover under the ADA, he must show that "a reasonable accommodation was possible." *Id.* (citing *Smith v. Midland Brake*, 180 F.3d 1154, 1174 (10th Cir. 1999)).

*1. Whether Plaintiff is a Qualified Individual*

Whether Plaintiff is a "qualified individual" within the meaning of the ADA is determined by a two-part analysis: (1) whether Plaintiff's impairment prevented him "from performing the essential functions" of his job; and (2) if Plaintiff was unable to perform the essential functions of his job, whether Plaintiff might have been able to perform those essential functions if Defendant provided him a reasonable accommodation. *Robert*, 691 F.3d at 1216

(citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1190 (10th Cir. 2003)).

In this case, Plaintiff was unable to perform the essential functions of his job at the time of his termination due to his impairment. Plaintiff's job duties as a counselor included regularly attending and conducting group and individual counseling sessions. In addition, Plaintiff was required to regularly attend and participate in drug court meetings and hearings at the courthouse. The record demonstrates that as of May 25, 2011, Plaintiff was unable to attend any of the aforementioned sessions, meetings, or hearings for almost a month due to Plaintiff's hospitalization and rehabilitation for multiple amputations. As such, Plaintiff's impairment prohibited him from performing the essential functions of his job: conducting and attending counseling sessions, drug court meetings, and hearings.

Although attendance was an essential function of Plaintiff's job, Plaintiff would still be a "qualified individual" within the meaning of the ADA if he could have performed his job with a reasonable accommodation. *See id.* Defendant contends that the only accommodation it could have provided Plaintiff was an indefinite leave of absence because Plaintiff never communicated when he could return to work. Defendant further argues that such an accommodation is not reasonable as a matter of law. In response, Plaintiff claims that he told Blackwood that he intended to return to work within two weeks. While unclear, it appears that Plaintiff also asserts that Defendant had an obligation to raise the issue of a reasonable accommodation.

Although a brief leave of absence can be a reasonable accommodation, "[t]here are two limits on the bounds of reasonableness for a leave of absence." *Id.* at 1217-18 (internal citations omitted). The first limit is clear; the employee must provide the employer with evidence of the *expected duration of the impairment*. *Cisneros*, 226 F.3d at 1130 (emphasis in original). Without an expected duration of the impairment, "an employer is unable to determine whether

the temporary exemption is a reasonable one." *Robert*, 691 F.3d at 1218. An employee's own belief of whether or when he could return to work is insufficient to create a triable issue of fact regarding the expected duration of the impairment. *Cisneros*, 226 F.3d at 1131-32.

The second limit is that the employee's "leave request must assure an employer that the employee can perform the essential functions of [his] position in the near future." *Robert*, 691 F.3d at 1218 (internal quotation and citation omitted). An indefinite leave of absence, however, cannot constitute a reasonable accommodation as "such a leave request does not allow the employee to perform the essential functions of the job in the *near future*." *Cisneros*, 226 F.3d at 1129.

Here, the accommodation of a leave of absence exceeds both limitations of reasonability. With respect to the first limit, the only evidence in the record that Plaintiff informed Defendant of the expected duration of his impairment are the statements to Blackwood by Plaintiff and his sister-in-law that Plaintiff could return to work within two weeks. However, Plaintiff testified that his statement was only based on his enthusiasm to return to work. In addition, there is no evidence in the record that his sister-in-law's statement was based on a medical assessment. Moreover, it is undisputed that at the time of Plaintiff's termination, Plaintiff's medical providers never told him when he could return to work or the expected length of his impairment, nor did Plaintiff furnish any medical evidence pertaining to his expected duration of impairment to Defendant. As such, the unsupported assertions by Plaintiff and his sister-in-law that Plaintiff could return to work within two weeks are not sufficient to create a triable issue of fact as to the reasonableness of a two-week leave of absence. It is also important to note that there is no indication in the record that Plaintiff would have been able to return to work within two weeks after either statement was made to Blackwood since Plaintiff was in rehabilitation until June 8,

2011, and Plaintiff testified that he felt he could not return to work until July 2011.

In regard to the second limit, there is no evidence in the record that Plaintiff could have returned to work in the near future, except for the unsupported statements by Plaintiff and his sister-in-law and Dr. Ledesma's notation in Plaintiff's FMLA application regarding Plaintiff's incapacitation for six to nine months. As addressed above, the bare assertions by Plaintiff and his sister-in-law cannot create a genuine issue of fact for trial that Plaintiff could have returned to work in the near future. Furthermore, Dr. Ledesma's notation is also insufficient to create a triable issue of fact. Dr. Ledesma's notation occurred on May 26, 2011, the day after Plaintiff was terminated. The information that Plaintiff could have returned to work within six to nine months was never conveyed to Defendant prior to or after Plaintiff's termination.

It is also important to note that Plaintiff testified that he did not notify Defendant of an expected return date to work because he believed that Defendant would give him an indefinite leave of absence. (Doc. 42-2) at 4 (depo. at 83-84). Plaintiff's belief that his position would be retained for an indefinite duration fails to create a triable issue of fact because such an accommodation "is unreasonable as a matter of law." *Robert*, 691 F.3d at 1219 (internal citation omitted).

Accordingly, the Court finds that Plaintiff's ADA claims fail as a matter of law because no reasonable jury could find that Defendant failed to reasonably accommodate Plaintiff's disability. The evidence in the record shows that prior to his termination Plaintiff failed to submit to Defendant sufficient evidence documenting his expected duration of impairment. The record also demonstrates that prior to his termination Plaintiff did not produce sufficient evidence to Defendant assuring it that Plaintiff could perform the essential functions of his job in the near future. Therefore, the Court finds that Plaintiff is not a qualified individual with a

disability under the ADA, and, thus, Defendant is entitled to summary judgment on Plaintiff's ADA claims in Count I and Count II.

2. *Whether Defendant Was Required to Participate in the ADA Interactive Process*

In his response, Plaintiff claims that Defendant was required to participate in the interactive process to determine the appropriate accommodation to enable Plaintiff to perform the essential functions of his job. Plaintiff further argues that Defendant is not entitled to summary judgment because Defendant foreclosed on the interactive process when it terminated Plaintiff. Defendant counters that it was not required to participate in the interactive process because a reasonable accommodation was not possible.

In the present case, this Court has concluded that Plaintiff did not establish that he was a qualified individual within the meaning of the ADA because he failed to show that the requested leave was a reasonable accommodation. *See supra* Part IV.A.1. Based on the Court's conclusion, Defendant was not required to engage in a futile interactive process. *See Valdez,* 462 Fed. Appx. at 819 (holding that employer not required to participate in interactive process if no reasonable accommodation possible) (citing *McBride v. BIC Consumer Prods.*, 583 F.3d 92, 101 (2d Cir. 2009)). The Court, therefore, finds that a reasonable jury could not return a verdict in Plaintiff's favor on his ADA claims. Defendant, accordingly, is entitled to summary judgment on Plaintiff's ADA claims in Count I and Count II.

B. *Plaintiff's New Mexico Common Law Claims in Counts III, IV, and VI*

Having granted summary judgment on Plaintiff's federal claims, Plaintiff is left with three state common law claims: *prima facie* tort, breach of an implied contract of employment, and breach of the implied covenant of good faith and fair dealing. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state claims if "the district

court has dismissed all claims over which it has original jurisdiction." "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal citation omitted). The Court, thus, declines to exercise supplemental jurisdiction over Plaintiff's state common law tort and contract claims. Accordingly, the Court will dismiss Plaintiff's state common law claims in Count III, Count IV, and Count VI of the Complaint without prejudice.

IT IS ORDERED that:

1. Defendant's Motion for Summary Judgment (Doc. 42) is granted;

2. summary judgment will be entered in Defendant's favor on Count I and Count II of Plaintiff's Complaint (Doc. 1), filed November 2, 2012;

3. Plaintiff's ADA claims against Defendant in Count I and Count II of the Complaint will be dismissed with prejudice; and

4. Plaintiff's state common law claims against Defendant in Count III, Count IV, and Count VI of the Complaint will be dismissed without prejudice.

UNITED STATES DISTRICT JUDGE